# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES AYOTTE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Judge Joan B. Gottschall |
| ) | |
| THE PRUDENTIAL INSURANCE ) | Case No. 12 C 5341 |
| COMPANY OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION & ORDER

Defendant The Prudential Insurance Company of America ("Prudential") moves to dismiss Plaintiff James Ayotte's Complaint pursuant to Federal Rule of Procedure 12(b)(6). Ayotte sued Prudential pursuant to §§ 502 (a)(1)(B) and (g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1132(a)(1)(B) and (g). He seeks benefits allegedly due to him under a long-term disability policy ("the Plan"), provided to employees of ISI Telemanagement Solutions, Inc. ("ISI"), which was issued, underwritten, funded, and administered by Prudential. Prudential argues that the Complaint must be dismissed because an ERISA suit pursuant to § 1132(a)(1)(B) may be brought only against the Plan itself. The court holds that, despite the general rule that an ERISA plaintiff seeking benefits must sue the plan, Prudential is a proper party to Ayotte's suit. Prudential's motion to dismiss is denied.

### I. BACKGROUND

According to the Complaint, Ayotte worked for ISI as vice president of engineering. He was forced to cease working on February 27, 2009, due to chronic

headaches. On March 2, 2009, he began receiving benefits under a long-term disability policy underwritten and administered by Unum, ISI's disability insurance provider at the time. Ayotte attempted to return to full-time work on January 4, 2010, but was able to do so only until February 26, 2010. Ayotte worked part-time at ISI from March 1, 2010, until August 24, 2010, when he was forced to cease work entirely. Ayotte then began receiving full long-term disability benefits from Prudential, which had replaced Unum as ISI's disability insurance provider. Ayotte alleges that the Plan issued and administered by Prudential is an "employee welfare benefit plan," as defined by 29 U.S.C. § 1002(1), and that incident to his employment with ISI, Plaintiff received coverage under the Plan as a "participant," as defined by § 1002(7).

On September 27, 2011, Prudential notified Ayotte that it was terminating his long-term disability benefits effective October 1, 2011. Ayotte appealed that decision internally, and Prudential upheld its decision based on file reviews performed by non-examining physicians. Ayotte then filed this suit against Prudential. He seeks an order reinstating his long-term disability benefits and further seeks to recover benefits that have accrued from October 1, 2011, to the present, along with interest on all overdue benefits.

Attached to Ayotte's Complaint is a copy of the Plan, called a "Group Insurance Contract for Short and Long Term Disability Coverage." The Plan states that the "Contract Holder" is "PruValue Insurance Benefits Trust." A section entitled "Certificate of Coverage" states that Prudential "welcomes you to the plan" and gives Prudential's address. (Compl. Ex. 1 (Plan) 6, ECF No. 1.) A "General Provisions" section defines the following terms: "*You* means a person who is eligible for Prudential coverage. *We, us, and our* means the Prudential Insurance Company of America." (*Id.* at 7.)

Under the terms of the Plan—which is also referred to as the "Prudential plan" (*id*. at 31)—Prudential approves applications for coverage, receives disability claims, determines whether someone is disabled under the terms of the Plan, evaluates eligibility for benefits, and provides benefits payments. The Plan defines the term "Payable claim" as "a claim for which Prudential is liable under the terms of the Group Contract." (*Id.* at 45.) A Summary Plan Description attached to the Plan states that Prudential "as Claims Administrator has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits. The decision of the Claims Administrator shall not be overturned unless arbitrary and capricious." (*Id*.)

## II. LEGAL STANDARD

A motion to dismiss pursuant to Rule 12(b)(6) should be granted if the plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in a complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) ("[P]laintiff must give enough details about the subject-matter of the case to present a story that holds together."). For purposes of a motion to dismiss, the court takes all facts alleged in the complaint as true and draws all reasonable inferences from those facts in the plaintiff's favor, although conclusory allegations that merely recite the elements of a claim are not entitled to this presumption of truth. *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011).

III. ANALYSIS

Under § 1132(a)(1)(B), a beneficiary of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Section 1132(d)(2) further provides, "Any money judgment under this subchapter against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."

Prudential argues that Ayotte's claims must be dismissed because he has sued Prudential, the Plan's issuer and claims administrator, rather than the Plan itself, and ERISA claims brought pursuant to § 1132(a)(1)(B) must be brought against the ERISA plan. In support of its argument, Prudential cites *Neuma, Inc. v. AMP, Inc.*, 259 F.3d 864, 872 n.4 (7th Cir. 2001), along with several other cases from the Seventh Circuit and this district. Prudential argues that this court is bound by controlling precedent to dismiss Ayotte's action because these cases have held that "ERISA permits suits to recover benefits only against the Plan as an entity." *Id.*

Ayotte responds that the Seventh Circuit cases cited by Prudential do not require the court to dismiss his claims against the insurer who issues the Plan. He further argues that Prudential is the logical defendant in this action. The court will first consider whether binding Seventh Circuit precedent requires it to dismiss the action.

In *Neuma*, in which an ERISA beneficiary sued an employer, the Seventh Circuit stated that in a suit pursuant to § 1132(a)(1)(B), an ERISA plaintiff could only recover benefits against the plan, not the employer. *Id. Neuma* cited *Jass v. Prudential Health*

*Care Plan, Inc.*, in which the Seventh Circuit upheld the dismissal of a claim against a plan administrator in her individual capacity, stating that a lawsuit against a plan was only enforceable against the plan as an entity. 88 F.3d 1482, 1490 (7th Cir. 1996). That reasoning was in turn based on the aforementioned provision in § 1132(d)(2), which states that claims for benefits "shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter."[1]

Since then, the Seventh Circuit has repeatedly stated that in a suit for ERISA benefits, the plaintiff is generally "limited to a suit against the Plan." *See, e.g., Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 610 (7th Cir. 2007). But the court has carved out an exception from the general rule for suits against plan administrators who are "closely intertwined" with the plan itself. In *Neuma*, for example, the Seventh Circuit refused to dismiss a suit against an employer because the record was "somewhat unclear as to the exact relationship between [the employer] and the relevant plan." 259 F.3d at 872 n.4. In *Riordan v. Commonwealth Edison Co.*, 128 F.3d 549, 551 (7th Cir. 1997), a plaintiff was permitted to sue his employer to recover ERISA benefits because the plan documents referred to the employer and plan interchangeably. And in *Mein v. Carus Corp.*, a suit against an employer was permitted because the employer was the plan administrator and the employer and the plan were "closely intertwined." 241 F.3d 581, 585 (7th Cir. 2001). In *Mote*, however, the Seventh Circuit affirmed the dismissal of Aetna, a plan administrator, from a suit for ERISA benefits. The court explained:

---

[1] Although the administrator in *Jass* was sued in her individual capacity, the Seventh Circuit found that her only contact with the plaintiff was in her capacity as an administrator of the ERISA plan, and that the record showed that she acted only within the scope of her employment. *Id.* at 1489.

5

> While we have allowed plaintiffs in ERISA cases to sue an ERISA plan administrator in some limited instances, the operative facts of those cases differ from those in this case. For instance, in [*Riordan*], we permitted a plaintiff to sue the plan administrator to recover ERISA benefits because the employer failed to raise the issue in the district court and the plan documents referred to the employer and the plan interchangeably. Neither of those pivotal facts is present here. Similarly, in [*Mein*], we allowed a plaintiff to sue his employer to recover ERISA benefits because the employer and the plan were closely intertwined. *Id*. at 584-85. We are not faced with that situation in this case, since Aetna was not Mote's employer and the Plan's policy distinguishes between the Plan, the employer, and Aetna.

*Id*. at 610.[2] Most recently, in *Feinberg v. RM Acquisition, LLC*, the Seventh Circuit explained:

> The proper defendant in a suit for benefits under an ERISA plan is . . . normally the plan itself [citations omitted], rather than the plan administrator, because the plan is the obligor. To sue the administrator for plan benefits is like suing a corporation's CEO to collect a corporate debt. . . . But when the lines between the plan, the plan administrator, and the plan sponsor are indistinct or contested, the plaintiff's designation of the "wrong" defendant can be forgiven provided the "right" defendant is not misled. [citing *Mote*, *Mein*, and *Musmeci v. Schwegmann Giant Super Markets, Inc.*, 332 F.3d 339, 349-50 (5th Cir. 2003).]

629 F.3d 671, 673 (7th Cir. 2011).

Notably, these cases indicate that the Seventh Circuit has never squarely held that § 1132(a)(1)(B) bars claims against an insurer who issues and administers a plan, determines eligibility for benefits, and pays all claims under the plan. And the proposition that a plan is the only proper defendant "is much less firmly established than [Prudential] would have us believe." *Mein*, 241 F.3d at 584. Prudential argues, however, that the exception to the general rule does not apply here. Before deciding whether the exception applies, the court must identify the contours of the exception.

---

[2] Prudential also cites *Blickenstaff v. R.R. Donnelley & Sons Co. Short Term Disability Plan*, 378 F.3d 669 (7th Cir. 2004), in which the district court had dismissed § 502(a)(1)(B) claims against an employer and claims evaluator, but the issue of the dismissal of those parties was not squarely before the circuit court, and the decision notes the district court's ruling but offers no analysis of the issue.

6

Some courts in this district have held that the exception applies only to allow suits against employers, and that a plaintiff may never sue an insurance company that issues an ERISA plan pursuant to § 1132(a)(1)(B). *See, e.g.*, *Schultz v. Prudential Ins. Co.*, 678 F. Supp. 2d 771, 776 (N.D. Ill. 2010) ("The Court also finds that the exceptions the Seventh Circuit recognized in *Mein* and *Riordan* do not apply because Schultz is not proceeding against her employer, but rather is suing the issuer of the plan."); *Tatera v. Prudential Ins. Co.*, No. 11 C 2667, 2011 WL 3876954, at *2 (N.D. Ill. Sept. 1, 2011) (rejecting claimant's argument that because Prudential was responsible for the denial of benefits, it was a proper defendant). Those decisions, of course, are not binding on this court.

Other district courts have applied an exception to the general rule based on the relationship between a claim administrator and the plan. In *Madaffari v. Metrocall Companies Group*, the court allowed a plaintiff to sue an insurance company that made claim determinations and provided benefits under an ERISA plan, where the plan itself had no assets and was ambiguously identified in the plan documents. No. 02 C 4201, 2004 WL 1557966, at *4 (N.D. Ill. July 1, 2004). Similarly, in *Penrose v. Hartford Life & Accident Co.*, the identity of the plan was unclear, and the court allowed a § 502(a)(1)(B) claim to proceed against the insurance company who issued the plan, reasoning that the insurance company had "the final word on whether a claim for benefits [would] be paid to a beneficiary [and] also [was] the party that funds the plan." No. 02 C 2541, 2003 WL 21801214, at *3 (N.D. Ill. Aug. 4, 2003). Recently, in *Friedman v. Pension Specialists, Ltd.*, another district court held that a plan sponsor could be sued even though it was neither the ERISA plan itself nor the employer, because "whether a third-party administrator may be sued is determined by whether it is 'closely intertwined'

or interchangeable with the Plan and whether it controls benefits determinations and payments." No. 11 C 5057, 2012 WL 983784, at *3 (N.D. Ill. Mar. 19, 2012) (citations omitted). In that case, the plan sponsor acted as a plan administrator and controlled benefit payments. *Id.*

The court concludes that the proper interpretation of this circuit's precedent is that a claim may proceed against a party other than the ERISA plan itself where the identity of that party—be it an employer, an insurance company, or another third-party administrator—is "closely intertwined" with the plan, and where the party controls eligibility for benefits and makes benefits payments. In other words, a party may be sued when it acts as an "obligor" to an ERISA plan beneficiary. *Feinberg*, 629 F.3d at 673.

Under that reading, the exception applies here. The Plan documents attached to Ayotte's Complaint refer interchangeably to Prudential and the Plan. For example, the definition section states: "***We, us, and our*** means The Prudential Insurance Company of America," while "***You*** means a person who is eligible for Prudential coverage." (Plan 6.) *See Mein*, 241 F.3d at 585 ("When the advantages of the plan are set out in the summary plan description, the pronouns we and our are used and seem clearly to refer to the company, not the plan."). Reading the Plan description, the court finds that, although the plan is apparently named either the "PruValue Insurance Benefits Trust" or "Short Term Disability and Long Term Disability Coverage for All Employees classified by the Employer as Executives," and the Plan Sponsor is identified as ISI, the Plan documents do not otherwise distinguish between the Plan and Prudential. *Cf. Mote*, 502 F.3d at 611 (holding that the plan in question "distinguishe[d] between the Plan, the employer, and Aetna"). Rather, the materials refer almost exclusively to Prudential. The court

concludes that "the lines between the plan [and] the plan administrator . . . are indistinct." *Feinberg*, 629 F.3d at 673.

In addition, Prudential issued the terms of the Plan, had the sole discretion to interpret those terms and to determine eligibility for benefits, and was obligated to pay benefits under the Plan. Appeals of denied claims were made to Prudential. (*Id*. (Summary of Plan Description).) Prudential thus appears to be the only party that could provide the benefits allegedly due under the Plan, and is therefore the logical defendant for Ayotte's action.

Accepting Ayotte's allegations as true for purposes of a motion to dismiss, the court concludes that in this case, as in *Madaffari*, *Penrose*, and *Friedman*, the identity of the insurer was intertwined with that of the Plan, and the insurer was in control of Plan benefits. Thus, the exception to the general rule that a plan is the proper defendant in a § 502(a)(1)(B) suit applies to render Prudential a proper defendant in this action.

In addition, although the court is obviously not bound by out-of-circuit case law, the court notes that barring a suit against Prudential would go against the prevailing law in other circuits. *Jass* relied on a Ninth Circuit case, *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1324 (9th Cir. 1985), for the rule that "ERISA permits suits to recover benefits only against the Plan as an entity." But the Ninth Circuit overruled *Gelardi* in 2011, holding *en banc* that an ERISA plan insurer was a proper defendant to an action seeking recovery of benefits, because the insurer was responsible for paying the claims and determining benefit eligibility. *Cyr v. Reliance Standard Life Ins. Co.*, 642 F.3d 1202, 1207 (9th Cir. 2011) (en banc).

In part, the Ninth Circuit rested its decision on the Supreme Court's interpretation of who could be a proper defendant under 29 U.S.C. § 1132(a)(3).[3] *See Harris Trust & Savings Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238 (2000). The Court held that that section of the ERISA statute did not limit the parties who could be a defendant in a suit for breach of fiduciary duty. *Id.* at 246-27. The Ninth Circuit found that the plain language of § 1132(a)(1)(B) similarly did not limit defendants to ERISA plans. *Cyr*, 642 F.3d at 1206. The Seventh Circuit has yet to grapple with this argument. *See Schultz v. Aviall, Inc. Long Term Disability Plan*, 670 F.3d 834, 836 n.1 (7th Cir. 2012) (reserving question of whether *Jass* should be revisited in light of *Harris* for "another case").

The Ninth Circuit also addressed the language in § 1132(d)(2) stating that "[a]ny money judgment . . . against an employee benefit plan shall be enforceable only against the plan as an entity and shall not be enforceable against any other person unless liability against such person is established in his individual capacity under this subchapter." It concluded that the "unless" language indicated that other parties could be sued under § 1132(a)(1)(B) *if* their individual liability was established. *Cyr*, 642 F.3d at 1206-07. It then examined the role the defendant insurer played with respect to benefits claims and concluded that that role made the insurer a proper defendant:

> Reliance denied Cyr's request for increased benefits even though, as the plan insurer, it was responsible for paying legitimate benefits claims. Reliance is, therefore, a logical defendant for an action by Cyr to recover benefits due to her under the terms of the plan and to enforce her rights under the terms of the plan, which is precisely the civil action authorized by § 1132(a)(1)(B).

*Id*. at 1207.

---

[3] That section authorizes suits "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Other circuits have similarly considered whether an entity exercised authority over a benefits claim in evaluating whether that entity is a proper defendant in an ERISA suit. *See, e.g.*, *Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 665 (1st Cir. 2010) (explaining that "the party that controls administration of the plan" is the proper defendant, unless it performs only "mechanical administrative tasks"); *Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 438 (6th Cir. 2006) ("[The insurer] is the claims administrator and exercised full authority in adjudicating Plaintiff's claim for benefits. . . . [and] is therefore the proper party defendant for a denial of benefits claim."); *Heffner v. Blue Cross & Blue Shield of Ala., Inc.*, 443 F.3d 1330, 1334 (11th Cir. 2006) (insurer that underwrote plan, had "complete discretion to interpret and administer" plan provisions, and paid claims was proper defendant); *Musmeci*, 332 F.3d at 349 (employer was a proper defendant because "it was the employer's decision to deny benefits").

The prevailing logic in these other circuits is that entities responsible for administering a plan that exercise discretion as to benefit payments are proper parties to a § 502(a)(1)(B) suit. This court finds that logic sound. Given the role played by Prudential with respect to Ayotte's benefits, the court concludes that Prudential is a logical defendant for Ayotte's action. The court cautions Ayotte, however, that his case against Prudential hinges on rather murky Seventh Circuit case law, and that this court's interpretation of that precedent conflicts with that of some of its fellow district courts, which have dismissed insurers as defendants on facts similar to those alleged here. *See, e.g.*, *Tatera*, 2011 WL 3876954, at *2. Given this uncertain terrain, in the interest of securing any relief to which he may be entitled should he prevail on his claims, Ayotte

may deem it prudent to amend his Complaint to add the Plan as a defendant.  *See Mein*, 241 F.3d at 585 ("[I]t is silly not to name the plan as a defendant in an ERISA suit.").

## IV. CONCLUSION

Because Prudential is closely intertwined with the Plan and is the logical defendant for this action, Prudential's motion to dismiss Ayotte's Complaint is denied.  If Ayotte wishes to amend his Complaint to add the Plan as a defendant, he must file an Amended Complaint by October 10, 2012.  Prudential is to answer or otherwise plead by November 7, 2012.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED:   October 1, 2012